229 P.3d 943 (2010)
Arthur WEST, Appellant,
Jerry L. Dierker, Jr., Plaintiff,
v.
Keith STAHLEY, Susan Messengee, Jeff Fant, Olympia City Council, Defendants,
City of Olympia, Port of Olympia; Weyerhaeuser Company, Respondents.
No. 37853-1-II.
Court of Appeals of Washington, Division 2.
April 27, 2010.
*944 Arthur West, Olympia, WA, Appearing Pro Se.
Jerry Dierker, Olympia, WA, Appearing Pro Se.
Kimberly Arden Hughes, Weyerhaeuser Law Dept., Federal Way, WA, Carolyn A. Lake, Goodstein Law Group PLLC, Tacoma, WA, Darren John Nienaber, Olympia City Attorney's Office, Olympia, WA, Jeffrey Scott Myers, Law Lyman Daniel Kamerrer et al., Olympia, WA, for Respondents.
BRIDGEWATER, J.
¶ 1 Arthur West appeals from the dismissal of his Land Use Petition Act (LUPA)[1] petition, challenging an engineering permit that the city of Olympia (City) issued to the Port of Olympia (Port). We hold that the superior court properly dismissed West's LUPA petition because he did not exhaust his administrative remedies. We affirm.

FACTS
¶ 2 Weyerhaeuser sought to operate a log yard on property leased from the Port and planned to construct new buildings to serve the log yard. The Port also planned to separately construct utility infrastructure to serve the proposed buildings and other parts of the Port's terminal.
¶ 3 In June 2006, before issuing any permits, the City evaluated the expansion and issued a land use approval and a State Environmental Policy Act (SEPA)[2] Determination of Nonsignificance (DNS). Because the City's DNS failed to examine the impact of the Port's infrastructure improvements, the hearing examiner rejected the DNS as insufficient in December 2006.
¶ 4 In April 2007, the Port issued a mitigated Determination of Nonsignificance (MDNS), which West and Jerry Dierker challenged in a separate action. The superior court transferred their case challenging the Port's MDNS from Judge Pomeroy to Judge Hicks. Alleging that the transfer was improper, West and Dierker filed an original petition with the Supreme Court.
¶ 5 With West's and Dierker's MDNS case still pending, the City issued an engineering permit to the Port that allowed it to construct utility infrastructure "at [its] own risk." CP at 10. The City issued the engineering permit on September 5, 2007, but entered it into public record on October 9, 2007. West and Dierker had actual knowledge of the engineering permit at least by October 10, 2007.
¶ 6 On October 18, 2007, West and Dierker challenged the engineering permit in superior court under the LUPA, contending, inter alia, that the engineering permit was void.[3] *945 Judge Pomeroy initially heard West's and Dierker's LUPA petition, but because it involved issues related to their MDNS case, she stayed the petition pending a resolution of their original petition.
¶ 7 On October 30, 2007, 20 days after receiving notice that the City issued the engineering permit, West and Dierker filed an administrative appeal to the hearing examiner. The hearing examiner dismissed the appeal as untimely, citing that West and Dierker did not file it within the 14-day appeal period that the city code required.
¶ 8 The Supreme Court eventually dismissed West's and Dierker's original petition, and Judge Wickham heard their LUPA petition challenging the engineering permit. Weyerhaeuser filed a CR 12(b)(6) motion to dismiss. Judge Wickham dismissed the case, finding that West's and Dierker's claims were unsubstantiated in law. Only West appeals.

ANALYSIS

I. Properly Dismissed LUPA Petition
¶ 9 The central issue on appeal is whether the trial court erred in dismissing West's and Dierker's LUPA petition; all other issues are ancillary to this central issue. We hold that the trial court properly dismissed the LUPA petition because West and Dierker undisputedly failed to exhaust their administrative remedies before filing it in superior court.
¶ 10 A trial court's ruling on a motion to dismiss for failure to state a claim upon which relief can be granted under CR 12(b)(6) is a question of law that we review de novo. Cutler v. Phillips Petroleum Co., 124 Wash.2d 749, 755, 881 P.2d 216 (1994). A trial court should dismiss a claim under CR 12(b)(6) only if it appears beyond a reasonable doubt that no facts justifying recovery exist. Cutler, 124 Wash.2d at 755, 881 P.2d 216. "`Under this rule, a plaintiff's allegations are presumed to be true', and `a court may consider hypothetical facts not part of the formal record.'" Cutler, 124 Wash.2d at 755, 881 P.2d 216 (quoting Hoffer v. State, 110 Wash.2d 415, 420, 755 P.2d 781 (1988), aff'd on reconsideration, 113 Wash.2d 148, 776 P.2d 963 (1989)). A trial court should grant CR 12(b)(6) motions "`sparingly and with care' and `only in the unusual case in which plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" Cutler, 124 Wash.2d at 755, 881 P.2d 216 (quoting Hoffer, 110 Wash.2d at 420, 755 P.2d 781).
¶ 11 LUPA is the exclusive means for judicial review of a local jurisdiction's "[l]and use decision." Former RCW 36.70C.020(1) (1995). To challenge a "land use decision," however, the petitioner must have standing, which LUPA limits to the following persons:
(1) The applicant and the owner of property to which the land use decision is directed;
(2) Another person aggrieved or adversely affected by the land use decision.... A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:

. . .
(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060 (emphasis added). Thus, regardless of whether petitioner is the owner of the property or an aggrieved person, LUPA requires the petitioner to exhaust administrative remedies.
¶ 12 To obtain a final determination from a local jurisdiction, a LUPA petitioner must necessarily exhaust all available administrative remedies. LUPA defines a "[l]and use decision" as a local jurisdiction's "final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals" on, among other things, "[a]n application for a project permit or other governmental approval required by law before real property may be improved, developed, modified, sold, transferred, or used." Former RCW 36.70C.020(1)-(1)(a) (emphasis added); Ward v. Bd. of Skagit County Comm'rs, 86 Wash.App. 266, 270-71, 936 P.2d 42 (1997). Exhausting administrative remedies is always a condition precedent *946 to challenging a "land use decision" that is subject to review under LUPA.
¶ 13 Under the Olympia Municipal Code (OMC), the hearing examiner has authority to hear and decide the validity of engineering permits. OMC 18.75.020. The hearing examiner's decision is final, OMC 18.75.080, except for certain types of development permits, in which the hearing examiner makes a recommendation to the city council that has authority to make the final decision. OMC 18.72.100; OMC 18.75.100. A party has 14 days to appeal an administrative decision approving or denying an engineering permit. OMC 18.75.020. Here, West had actual notice of the City's decision to grant the engineering permit on October 10, 2007, but did not file an administrative appeal to the hearing examiner challenging the permit until October 30. West thus failed to exhaust his administrative remedies within 14 days of either September 5, when the City actually issued the permit, or October 10 when he had actual notice of the permit. Nonetheless, West suggests that we should excuse his failure to exhaust administrative remedies because the City did not give him proper notice of the engineering permit. His argument is not persuasive.
¶ 14 Nickum v. City of Bainbridge Island, 153 Wash.App. 366, 223 P.3d 1172 (2009), is pertinent and involves a similar situation to the case at bar. In Nickum, the city of Bainbridge Island issued Verizon a building permit for a cell tower extension on September 14, 2007. Nickum, 153 Wash.App. at 372, 223 P.3d 1172. The neighbors who challenged the permit did not receive notice until October 30, 2007, when one of them saw work being done at the site. Nickum, 153 Wash.App. at 372, 223 P.3d 1172. Nine days later, on November 8, 2007, the neighbors filed an appeal with the city hearing examiner, challenging the city's issuance of the SEPA exemption and building permit. Nickum, 153 Wash.App. at 372, 223 P.3d 1172. The hearing examiner dismissed the appeal as untimely, citing a local ordinance that required an appeal of an administrative land use decision to be "filed within 14 days after the date of the decision." Nickum, 153 Wash.App. at 372, 223 P.3d 1172.
¶ 15 The issue before us in Nickum was whether to apply the principle of equitable tolling, such that the 14-day statute of limitations to file an administrative appeal would run from when the neighbors realized that the city approved the permit, not from when the city issued the permit. We held that equitable tolling did not apply because Verizon did not deceive the neighbors in gaining permit approval. Nickum, 153 Wash.App. at 379, 223 P.3d 1172. Notably, Nickum relied on Prekeges v. King County, 98 Wash.App. 275, 283, 990 P.2d 405 (1999), review denied, 140 Wash.2d 1022, 10 P.3d 404 (2000), which stated, "Assuming that a failure to exhaust administrative remedies can be cured through the application of equity, equity cannot be invoked in the absence of bad faith on the part of the defendant and reasonable diligence on the part of the plaintiff." Nickum, 153 Wash.App. at 379, 223 P.3d 1172 (emphasis added). We do not reach the issue of equity here because equity would not cure West's failure to exhaust his administrative remedies.
¶ 16 Equitable tolling would not cure West's failure to exhaust administrative remedies because he failed to appeal to the City hearing examiner within 14 days after he had actual notice. The City issued an engineering permit on September 5, 2007, West received notice of that engineering permit on October 10, 2007, and West appealed to the city hearing examiner on October 30, 2007. The local ordinance required West to appeal within 14 days of an administrative decision approving or denying an engineering permit. Therefore, even if we equitably tolled the time between when the City issued the permit and when West received notice, he would still have failed to timely exhaust his administrative remedies, as 20 daysnot 14 days elapsed between his notice and his appeal to the city hearing examiner.
¶ 17 Instead, we find the reasoning in Habitat Watch persuasive. Habitat Watch v. Skagit County, 155 Wash.2d 397, 120 P.3d 56 (2005). In Habitat Watch, our Supreme Court reasoned that defective notice was inconsequential when a LUPA petitioner had learned of the land use decision in a public disclosure request but still failed to directly *947 challenge the decision within 21 days after discovering it. Habitat Watch, 155 Wash.2d at 408-09, n. 6, 120 P.3d 56. Although Habitat Watch dealt with notice under LUPA's 21-day statute of limitation, the reasoning nonetheless applies to exhausting administrative remedies.
¶ 18 Stemming from LUPA's express purpose of "timely judicial review," RCW 36.70C.010, LUPA's 21-day statute of limitations is a strict, uniform deadline for appealing the final decisions of local land use authorities. RCW 36.70C.040(2)-(3); Habitat Watch, 155 Wash.2d at 406, 120 P.3d 56. Just as a LUPA petitioner must bring a petition within 21 days of the final land use decision, a LUPA petitioner must exhaust all administrative remedies before obtaining a final land use decision. RCW 36.70C.060(1)(d). Therefore, like the 21-day statute of limitation, exhausting administrative remedies is a fundamental tenant under LUPA; failure to do either is an absolute bar to bringing a LUPA petition to superior court.
¶ 19 It is undisputed that West failed to timely exhaust his administrative remedies. Because exhausting administrative remedies, like LUPA's 21-day statute of limitations, is an absolute prerequisite to bring a LUPA petition, we hold that the reasoning articulated in Habitat Watch precludes West from taking shelter under defective notice when he had actual notice but still failed to timely exhaust his administrative remedies.
¶ 20 As equitable tolling is inapplicable to this case, West's lack of standing under LUPA disposes the issue of whether the trial court properly dismissed his LUPA petition. West does raise several other issues, but he has failed to demonstrate how those issues have merit, and we therefore decline to address them.[4] Indeed, at oral argument, he conceded that his failure to timely exhaust his administrative remedies could be dispositive of his entire case. And to the extent that he preserved his argument that LUPA is unconstitutional and that the trial court's dismissal violated his constitutional rights, we decline to consider the issue because he has failed to provide reasoned argument. See State v. Johnson, 119 Wash.2d 167, 171, 829 P.2d 1082 (1992) ("Parties raising constitutional issues must present considered arguments to this court.").

II. Attorney Fees
¶ 21 Finally, Weyerhaeuser and the Port[5] contend that this court should award them attorney fees and costs for defending against a frivolous appeal. West does not respond. We agree with Weyerhaeuser and the Port that this appeal is frivolous.
¶ 22 Under RAP 18.1(a), a party on appeal is entitled to attorney fees if a statute authorizes the award. RAP 18.9 authorizes this court to award compensatory damages when a party files a frivolous appeal. Kearney v. Kearney, 95 Wash.App. 405, 417, 974 P.2d 872, review denied, 138 Wash.2d 1022, 989 P.2d 1137 (1999). An appeal is frivolous if there are "`no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility' of success." In re Recall of Feetham, 149 Wash.2d 860, 872, 72 P.3d 741 (2003) (quoting Millers Cas. Ins. Co. v. Briggs, 100 Wash.2d 9, 15, 665 P.2d 887 (1983)).
¶ 23 This appeal is frivolous.[6] West failed to exhaust his administrative remedies before filing his LUPA petition. Although we should not discourage citizens from challenging land use decisions that are supported in law, we should nonetheless discourage citizens from filing frivolous lawsuits designed *948 to harass or delay valid land use decisions. Because West presented no debatable point of law, his appeal lacks merit, and the chance for reversal was nonexistent (during oral argument West acknowledged that under case law he had not exhausted his administrative remedies and he would lose, but he urged us to overturn prior decisions). We hold that Weyerhaeuser and the Port are entitled to reasonable attorney fees and costs incurred in defending this frivolous lawsuit.
¶ 24 Affirmed.
We concur: ARMSTRONG, J., and PENOYAR, A.C.J.
NOTES
[1] Chapter 36.70C RCW.
[2] Chapter 43.21C RCW
[3] West and Dierker also raised following causes of action: (1) unconstitutional expenditure of public funds; (2) nuisance; (3) mandamus/prohibition; (4) declaratory relief; and (5) negligence.
[4] West also raises the following issues: res judicata, collateral estoppel, appearance of fairness, mandamas, prohibition, declaratory judgment, nuisance, anti-SLAPP (Strategic Lawsuit Against Public Participation), taxpayer claims (attorney general's failure to act), unconstitutional claim regarding LUPA.
[5] The City does not request attorney fees.
[6] Because we decide the attorney fee issue under RAP 18.9, we do not address the issue with respect to RCW 4.84.370.