IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| WOODINVILLE WATER DISTRICT, a Washington municipal corporation, | No. 86736-9-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KING COUNTY, a political subdivision of the State of Washington; SEYED MALEK, individually; SARVENAZ JENABI, individually; FARHAD FARZAMI, individually; and SEIRAN KHALEDIAN, individually, | |
| Respondents. | |

CHUNG, J. — Woodinville Water District (District) submitted a petition for review pursuant to the Land Use Petition Act (LUPA), chapter 36.70C RCW, challenging a final administrative decision from the King County Hearing Examiner (KCHE) concerning a determination by the District on water service availability for two undeveloped parcels of land owned by Respondents. The superior court dismissed the petition, concluding that the District failed to exhaust its administrative remedies and thus lacked standing. The District appealed. We hold that while the District did not itself raise the issues during the administrative review, the issues are preserved because another party raised them. We therefore reverse and remand to the trial court for further proceedings.

FACTS

In March 2022, Respondents Seyed Ali Malek Abadi, Sarvenaz Jenabi, Farhad Farzami, and Seiran Khaledian (Property Owners) purchased two neighboring undeveloped parcels in a single real estate transaction with the intent to develop each parcel with a single-family home. The parcels are located within unincorporated King County for construction and other permitting purposes and are at the eastern edges of the service area of Woodinville Water District for water availability purposes. Because applications for new construction require certificates of available water and sewer services from the District prior to submitting a development permit, the Property Owners applied for water service with the District. On February 11, 2022, the District issued the Property Owners a King County Certificate of Water Availability (CWA) determining that the District could provide service in a "timely and reasonable" manner.

On January 9, 2023, the Property Owners appealed the District's offer of service for the two undeveloped parcels to the King County Utilities Technical Review Committee (UTRC), arguing that the District's offer of service was not timely or reasonable due to financial burden. As a result, the Property Owners requested approval of a new individual private well for water service on the property. On January 17, 2023, the District submitted a letter in response to the application that addressed both appeals.

Between January and May 2023, the District and the Property Owners engaged in a series of meetings with the UTRC, during which the Property Owners provided supplemental information concerning the costs of construction and discussed the District's potential alternative options to serve the parcels with water. The Property

Owners also proposed an alternative water service route that was similar to the District's proposed route. At the May 19, 2023 hearing on the appeal, the District[1] argued that the CWA was consistent with its utility policy and that the terms and conditions were reasonable. Because the Property Owners could not show that the potential options offered by the District were not timely or reasonable, the UTRC denied the requests for either an alternative system or a private permit exempt well.

On June 29, 2023, the Property Owners appealed the UTRC's decisions to the KCHE.[2] Among other arguments, the Property Owners contended that the UTRC decision should be reversed as it did not apply the relevant code. They cited to the East King County Coordinated Water System Plan (CWSP), Section V.2.A.2 which states, "Should the utility not be willing or able to provide timely service or the applicant considers the conditions of service to be unreasonable, the applicant will be referred to SKCHD[3] for action as described in the first instance above."[4] According to the Property Owners, because the District was unwilling or unable to provide timely service, and they considered the conditions of service to be unreasonable, the UTRC was legally obligated to refer them to SKCHD for construction of a private exempt well.

The UTRC requested a hearing on the consolidated appeal before the KCHE. In addition to the contact information for the applicants/appellants, the request identified "Principal Staff" as the UTRC Chair, Daniel Cardwell, and King County senior deputy

---

[1] The UTRC decision states generally that "District staff" provided feedback. Its initial response letter was drafted by Marci Chew, Senior Engineering Technician with Woodinville. An engineer for the District, Christian Hoffman, attended the hearing.
[2] The KCHE consolidated the two appeals. As the basis for the two UTRC Decisions was the same in each, we refer to them as one decision.
[3] Seattle-King County Health Department. Public Health-Seattle & King County is the successor agency to SKCHD.
[4] The Property Owners also cite to the King County Code (KCC) that codified the CWSP, which is KCC 13.28.055.

prosecuting attorney from the Department of Local Services (Department), Jina Kim. The request also listed "Interested Party" Christian Hoffman from the District. At a prehearing conference on July 31, 2023, Hoffman was present. When determining the briefing schedule and selecting a hearing date, Hoffman requested a later hearing date to accommodate a conflicting District board meeting. The KCHE issued a "Prehearing Order and Notice of Briefing and Remote Hearing" on August 7, 2023, identifying the Property Owners as the appellants and the Department as the representative for King County.

The Property Owners filed a motion for summary judgment arguing the "UTRC ignored its code mandated obligation to refer the water service request to Public Health for issuance of a well permit . . . which it was required to do under CWSP, section V.2A.2, and KCC 13.28.055." Alternatively, the Property Owners requested a remand to direct the UTRC to refer the matter to the East King County Regional Water Association (EKRWA) for its "input and mediation" pursuant to the CWSP. The Department contested the motion based on subsequent "changes to the law, corresponding plan updates, and the cessation of review functions by Public Health and EKRWA." On October 25, 2023, the KCHE denied the Property Owners' motion for summary judgment.

The Property Owners filed a motion for reconsideration, and the Department again provided briefing in opposition to the motion. The KCHE considered the motions without oral argument and issued a final decision on December 22, 2023, granting the motion for summary judgment and reversing the UTRC decisions. It ordered a remand

on the matter "to Public Health to proceed as it would with any other building permit application where there is no 'reasonable' water service offer from a district."

On January 12, 2024, the District filed a LUPA petition with the King County Superior Court seeking review of the KCHE's final administrative decision. The Property Owners moved to dismiss the petition, contending that the District failed to exhaust its administrative remedies because it failed to intervene or take a position in the underlying land use appeal and, thus, lacked standing to appeal under RCW 36.70C.060.[5] The superior court agreed and granted the motion to dismiss, reasoning:

> [the District] failed to exhaust its administrative remedies to the extent required by law, so it lacks standing to bring its petition. Here, there is no dispute that, aside from attendance of the initial prehearing conference, [the District] did not participate in the contested motions before the hearing examiner. As pointed out during oral argument, it is impossible to ascertain from the record WWD's position on the Property Owners' motions for summary judgment and reconsideration. As [the District] did not meet King County Code 20.22.010's definition of a "party" to a hearing examiner appeal, did not seek to intervene as allowed by the hearing examiner's rules of procedure, and made no effort to make its position known to the hearing examiner, [the District] failed to exhaust its administrative remedies.

The District submitted a motion for reconsideration, and the trial court denied the motion. The District timely appeals to this court.

## DISCUSSION

The District contends that because it "exhausted its administrative remedies to the extent allowed by law," the trial court erred in dismissing its LUPA petition. More specifically, the District argues that it did not need to raise the issues raised in the LUPA petition during the administrative appeals process because the Department raised them.

---

[5] The Property Owners also moved to dismiss on an alternative theory, but because the Court found in its favor on the first issue, the alternative theory is not addressed in briefing on appeal.

 In response, the Property Owners argue that because the District "did not intervene or meaningfully participate in the Hearing Examiner proceedings, it was not a party to the administrative proceedings it now appeals" and failed to exhaust its administrative remedies, so the trial court properly denied its LUPA petition. We agree with the District that the exhaustion requirement was satisfied because the Department raised the same arguments during the administrative appeal.

LUPA governs judicial review of land use decisions. RCW 36.70C.030. LUPA expressly addresses standing and incorporates an exhaustion of remedies requirement, providing in relevant part,

> Standing to bring a land use petition under this chapter is limited to the following persons:
>
> (1) The applicant and the owner of property to which the land use decision is directed;
>
> (2) Another person aggrieved or adversely affected by the land use decision, or who would be aggrieved or adversely affected by a reversal or modification of the land use decision. A person is aggrieved or adversely affected within the meaning of this section only when all of the following conditions are present:
>
> (a) The land use decision has prejudiced or is likely to prejudice that person;
>
> (b) That person's asserted interests are among those that the local jurisdiction was required to consider when it made the land use decision;
>
> (c) A judgment in favor of that person would substantially eliminate or redress the prejudice to that person caused or likely to be caused by the land use decision; and
>
> (d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

RCW 36.70C.060.[6]

---

[6] The first three conditions, RCW 36.70C.060(2)(a)-(c), are not at issue here.

"The exhaustion of remedies prerequisite furthers LUPA's policy of efficient and timely review of land use actions." Aho Construction I, Inc. v. City of Moxee, 6 Wn. App. 2d 441, 457, 430 P.3d 1131 (2018) (citing Durland v. San Juan County, 182 Wn.2d 55, 68, 340 P.3d 191 (2014)). The doctrine of exhaustion

> (1) ensures against premature interruption of the administrative process, (2) allows the agency to develop the necessary factual background on which to base a decision, (3) allows exercise of agency expertise in its area, (4) provides a more efficient process, and (5) protects the administrative agency's autonomy by allowing it to correct its own errors and ensuring that individuals do not ignore its procedures by resorting to the courts.

Aho Construction I, Inc., 6 Wn. App. 2d at 457.

The party seeking judicial review of agency action bears the burden of establishing standing. City of Burlington v. Washington State Liquor Control Bd., 187 Wn. App. 853, 861, 351 P.3d 875 (2015). "The superior court lacks jurisdiction over a LUPA petition if the petitioner failed to exhaust remedies." Aho Construction I, Inc., 6 Wn. App. 2d at 457. We review issues of standing de novo. Burlington, 187 Wn. App. at 861.[7]

I. Exhaustion of Remedies When Petitioner Did Not Raise Arguments Below

The District argues that "as long as the pertinent issues raised at judicial appeal have been addressed administratively, no further exhaustion was required from a party appealing an administrative decision." The District primarily relies on Washington Attorney General's Office, Public Counsel Unit v. Washington Utilities & Transportation Commission, 4 Wn. App. 2d 657, 423 P.3d 861 (2018) (WUTC).[8] In WUTC, an electric

---

[7] Respondents cite the same de novo standard of review based on the procedural posture, as CR 12(b)(6) motions to dismiss are reviewed de novo.

[8] The court based its analysis on the Administrative Procedure Act's (APA) exhaustion statute, RCW 34.05.554(1), rather than the LUPA exhaustion requirement. WUTC, 4 Wn. App. 2d at 677.

and natural gas company, Avista Corporation (Avista), petitioned the Washington Utilities and Transportation Commission (WUTC) to change its rates for electric service. Id. at 659. The Public Counsel Unit (PCU) of the Attorney General's Office entered a notice of appearance in the subsequent joint ratemaking proceedings. Id. On appeal from WUTC's final order setting Avista's rates, PCU argued that WUTC improperly used an "attrition adjustment" when setting rates. Id. at 677. WUTC argued PCU had waived this argument because it had dedicated only a single sentence to the issue in a post-hearing brief. Id. at 678. Division Two of this court noted that PCU had not itself properly raised the issue at the administrative level, but another party had. Id. The WUTC court then followed federal cases that held that the exhaustion requirement is satisfied where the agency " 'has had an opportunity to consider the identical issues . . . which were raised by other parties.' " WUTC, 4 Wn. App. 2d at 679 (quoting Nat. Res. Def. Council, Inc. v. U.S. Envtl. Prot. Agency, 824 F.2d 1146, 1151 (D.C. Cir. 1987) (quoting Buckeye Cablevision, Inc. v. United States, 438 F.2d 948, 951 (6th Cir. 1971)).[9] Therefore, as the other party had previously raised the argument in the proceedings before WUTC, the court held that it would consider PCU's argument on appeal. Id.

The Property Owners argue that WUTC is distinguishable because when PCU argued nonwaiver, they had participated in the preceding administrative process.

---

However, this is immaterial because "Washington decisions apply the same exhaustion principles regardless of whether the exhaustion requirement arises from the Administrative Procedure Act, LUPA, or some other source." Aho Construction I, Inc., 6 Wn. App. 2d at 458, see also Chelan County v. Nykreim, 146 Wn.2d 904, 937, 52 P.3d 1 (2002).

[9] Explaining why it chose to follow federal cases, the WUTC court noted that the Washington Supreme Court had cited to the D.C. Circuit for the policies underlying the waiver doctrine, and "[t]hese policies are all supported by allowing another party to preserve an issue." WUTC, 4 Wn. App. 2d at 679 (citing King County v. Boundary Review Bd., 122 Wn.2d 648, 669, 860 P.2d 1024 (1993)). Further, the D.C. Circuit had expressly allowed another party to preserve and issue as long as "the agency 'had an opportunity to consider' the issue." WUTC, 4 Wn. App. 2d at 679-80 (quoting Nat. Res. Def. Council, 824 F.2d at 1151).

However, the court in WUTC did not base its decision to address PCU's argument on appeal on that fact. They also cite to Ward v. The Board of County Commissioners, Skagit County for the proposition that standing requires that a party have "participated in the administrative process to the extent allowed." 86 Wn. App. 266, 271-72, 936 P.2d 42 (1997).[10] But the cases cited by the Property Owners do not require any particular form of participation before determining that an issue has been properly exhausted. To the contrary, "[LUPA] states nothing of the degree of participation or the specificity with which issues must be raised before an administrative agency or municipality to seek judicial review." Aho Construction I, Inc., 6 Wn. App. 2d at 457 (citing Citizens for Mount Vernon v. City of Mount Vernon, 133 Wn.2d 861, 868, 947 P.2d 1208 (1997)); see also RCW 36.70C.060.

The Property Owners attempt to read into the statute more than it requires. For example, in Ward, the owners had missed the deadline to appeal the denial of an application for a variance and special use permit. 86 Wn. App. at 269. Then they filed a LUPA action. Id. They claimed they were not required to exhaust their administrative remedies because RCW 36.70C.060(1) did not contain the same exhaustion requirement as RCW 36.70C.060(2). Ward, 86 Wn. App. at 268-70. The court disagreed, explaining that the "doctrine of exhaustion of administrative remedies is well established in Washington" and the "[s]pecific enumeration of the exhaustion requirement for non-owners carries no inference that it has been abrogated for owners." Id. at 271-72. The court further explained that the logic in the statute's "enumeration of

_____

[10] The trial court appeared to indicate a similar understanding because it noted that the District "made no effort to make its position known to the hearing examiner" and thus "failed to exhaust its administrative remedies."

9

the exhaustion requirement for non-owners" was that "[m]any could be 'aggrieved' by a land use decision," and, therefore, the legislature "sensibly confined the category of non-owners eligible to seek judicial review of such decisions *to those who participated in the administrative process to the extent allowed*." Id. at 271-72 (emphasis added). The Property Owners' focus on the words "to the extent allowed" is an unwarranted addition to the statutory language.

Similarly, in Citizens for Mount Vernon, our Supreme Court held that citizens exhausted their administrative remedies when they challenged the city of Mount Vernon's approval of a rezone and a specific development project because they had raised the same issues and participated in every administrative process available to them—written correspondence and testimony at public hearings. 133 Wn.2d at 869. The citizens could not have raised the issue with the Growth Management Hearings Board, as the developer argued, because the city's approval of a specific development project was outside the scope of the GMHB's review. Id. at 868. While the statute "clearly required" exhaustion, the court reasoned that it "states nothing of the degree of participation or the specificity with which issues must be raised to seek judicial review." Id.

Thus, we disagree with the Property Owners that the District cannot rely on another's arguments before the KCHE unless the District was a party below. Rather, an owner or aggrieved person satisfies the exhaustion requirement so long as the relevant administrative agency had an opportunity to review the issues and other requirements under RCW 36.70C.060 are met. Therefore, so long as a different party timely raised the issue before the relevant administrative agency, the District has satisfied the

exhaustion requirement for standing. We reach this conclusion regardless of the District's status as a party below.

Moreover, even if LUPA requires a petitioner to have been a party to the prior administrative proceedings to satisfy the exhaustion requirement, here, we conclude the District qualified as a party below.

The UTRC "[s]erve[s] as the appeal body to hear all issues relating to . . . the extension of existing public water service . . . based on whether an existing water purveyor can provide service in a timely and reasonable manner." KCC 13.24.090(B)(3)(a). A decision by the UTRC is a final county action, "unless further appeal is made to the office of the hearing examiner, in accordance with [KCC] 20.22.040 and 20.22.080." KCC 13.24.090(B)(3)(b)(4). KCC 20.22.080, which controls appeals on the topic of "Planning," generally, requires that a person initiate "an appeal from a decision of an agency by delivering an appeal to *the issuing agency*." (Emphasis added). KCC 20.22.010(H)(1-7) defines a "party" as

> 1. An applicant, proponent, petitioner or appellant; 2. The owner or owners of property subject to a hearing; 3. The responsible agency; 4. Another agency with jurisdiction or review authority over a proposal or proceeding that has notified the office of the hearing examiner in writing of its request to be a party; 5. The entity issuing a ruling that is appealed to the examiner; 6. A person participating substantively in the hearing, by providing comment, evidence, or argument, is considered a party only for purposes of a motion for reconsideration to the examiner determination or appeal of the examiner recommendation; and 7. Another entity to whom the examiner grants party status.

KCC defines an "agency" as "the executive branch, including departments, divisions, sections, and offices, the assessor, the King County board of health, and any board, commission, or other body subject to examiner determinations under this chapter." KCC

20.22.010(A). Here, the District was the "responsible agency" because it made the initial offer of service and, therefore, qualifies as a "party" under KCC 20.22.010(H)(3).

It is undisputed that the Property Owners sought review of the District's offer of service and that both the District and the Property Owners participated in that review before the UTRC. Once the UTRC rendered its decision, the Property Owners again sought review, this time by the KCHE. The hearing examiner makes the County's decision final for this type of case. KCC 20.22.040(R). The decision shall be final unless review is initiated in the superior court under LUPA. See KCC 20.22.040; RCW 36.70C.030. Although the KCHE's initial order and order on reconsideration identified the same two groups in its "caption"—the appellants/Property Owners and the Department—the certificate of service shows that the District continued to receive hard copies of the decisions through "Interested Party" Hoffman. Hoffman was also present at the initial prehearing conference.[11] Therefore, the District was a party to the proceedings below, even if it did not raise the issues presented in its LUPA petition.

II.  Issues Raised Before the KCHE

Because the District may have standing based on arguments made by others before the KCHE, we must now determine whether others raised the same arguments to the KCHE that the District attempts to raise in its LUPA petition. To properly raise an issue before an administrative agency, "there must be more than simply a hint or a slight reference to the issue in the record." King County v. Boundary Review Bd., 122

_____

[11] It is immaterial that Hoffman was not an attorney, as "[r]epresentation by an attorney is not required for full participation." KING COUNTY OFF. OF HR'G EXAM'R, RULES OF PROCEDURE AND MEDIATION r. X(C), at 17 (June 5, 2017), https://kingcounty.gov/~/media/indepen dent/hearingexaminer/documents/ RulesAdoptedbyMotion14876.ashx?la=en&hash= 49FE193B0CF15E1FEC4044EFE4510C3C.

Wn.2d 648, 670, 860 P.2d 1024 (1993). Factors "germane to determining sufficiency of

exhaustion" include but are not limited to

> the number of sentences devoted to an issue in any written brief given to
> the administrative agency; the amount of language devoted to the argument
> compared to the amount of language devoted to other arguments; the clarity
> of the presentation before the administrative agency; citations to statutes
> and case law and the accuracy of the citations; if the party asserts
> numerous issues in a brief, whether the issue on appeal was separated in
> the brief or introduced with a heading; and whether the challenger's
> presentation to the administrative agency applied facts to the law.

Aho Construction I, Inc., 6 Wn. App. 2d at 464. For example, in Aho Construction,

Division Three of this court agreed that a party had sufficiently exhausted their

administrative remedies after they had repeatedly asserted arguments before the

relevant agency, supplied related reports supporting their position, and generally

presented their argument with supporting law and analysis. Id. at 465.

Though the LUPA petition is not detailed in its description of the alleged errors, it

discusses the KCHE's initial rulings and its rulings on reconsideration, stating in relevant

part:

> the Decision is (1) an erroneous interpretation of the law, after allowing for
> such deference as is due the construction of law by a local jurisdiction with
> expertise; (2) not supported by evidence that is substantial when viewed in
> light of the whole record before the court; and (3) a clearly erroneous
> application of the law to facts. *See* RCW 36.70C.130(1)(b)-(d).

Thus, in its LUPA petition, the District challenges whether CWSP section V.2.A.2 and

KCC 13.28.055 require the UTRC to refer the matter to Public Health for issuance of a

well permit.

These same issues were raised before the KCHE in sufficient detail. As in Aho

Construction and WUTC, the arguments were more than mere "hints" or "slight

references" before the KCHE. See King County, 122 Wn.2d at 670 (requiring "more

13

than simply a hint or a slight reference to the issue in the record"). The Department responded to the Property Owners' motion for summary judgment, focusing on that issue, and covered changes in state law, corresponding water plan updates, relevant municipal code, and shifts in which administrative body reviews "the extension of existing public water service within the boundaries of a critical water supply service area." An accompanying declaration served to support the motion. When the Property Owners submitted a motion for reconsideration, the Department again responded. The argument reiterated that relevant code requires the UTRC to serve as the body to decide timely and reasonable service appeals and the CWSP does not create an exemption to skip that review process.

Here, the District was a party to the KCHE appeal and the same issue was raised before the relevant agency, albeit through the Department. For the District, this was the furthest it could take the administrative appeal before being able to appeal to a superior court under LUPA. Accordingly, the District exhausted its administrative remedies and should be able to proceed with its LUPA petition.

## CONCLUSION

We reverse and remand for further proceedings before the trial court.

_Chung, J._

WE CONCUR:

_Birk, J._      _Mann, J._